UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SANJUANITA EVANS                                                                                   PLAINTIFF

V.                                                                        CIVIL ACTION NO. 4:10-CV-27-DPJ-FKB

MENDOTA INSURANCE COMPANY,
PAKOU VANG, CLAIM EXAMINER, AND
GARDNER & ASSOCIATES ENTERPRISE, INC.
D/B/A GARDNER-BEATTY ASSOCIATES,
WALT GARDNER, AGENT                                                                  DEFENDANTS

ORDER

This insurance-coverage dispute is before the Court on cross motions for summary judgment filed by Defendant Mendota Insurance Company ("Mendota") [23] and Plaintiff Sanjuanita Evans [31]. The Court, having fully considered the parties' submissions and the applicable law, finds that Mendota's motion is well taken and should be granted, and that Evans' motion should be denied.

I.      FACTS AND PROCEDURAL HISTORY

Evans applied for personal automobile insurance with Mendota in March 2006. Although her son Erik was then older than 14, Evans failed to identify him when asked to "LIST ALL DRIVERS AND RESIDENTS OF THE HOUSEHOLD 14 YEARS OF AGE OR OLDER, LICENSED OR NOT." Def.'s Mot. [23] Ex. 1 to Ex. A, Application 1. She further failed to list him as an excluded driver on the application. *Id*. In fact, his name does not appear on the application at all. Based on this application, Mendota issued policy number PA1099539.

In June 2007, Erik was involved in a motor vehicle accident while driving Evans's truck, prompting Evans to make a claim under her Mendota policy. Evans later gave a recorded

statement in which she said that Erik had always lived with her, but she did not add him to the application because it would have increased her premium:

> Q: Who drove the vehicle on the day of the accident?
>
> A: Oh my son.
>
> . . . .
>
> Q: Okay and what is his address?
>
> A: Same.
>
> Q: How long has he lived with you?
>
> A: Forever. I mean ever since he was born he's been with me.
>
> . . . .
>
> Q: But on the application it does ask to list all drivers, all people in your household 14 years of age or older.
>
> A: I'm thinking so, but I don't remember because it's been awhile.
>
> Q: If you saw that question why didn't you add your son on the application?
>
> A: Because it would have been sky high and I couldn't afford it.
>
> Q: So you did read a question?
>
> A: I wouldn't be able to afford it anyway. Because they tell me that, if you add another person it's going to get higher and higher.
>
> . . . .
>
> Q: So you knew about it, but you just couldn't afford it?
>
> A: I couldn't afford it. . . .
>
> Q: So you do remember that question on the application?
>
> A: They asked me, but I wasn't able to get it.

> . . . .
>
> Q: But you know you could have added him on as an excluded driver?
>
> A: Excluded?
>
> Q: Yeah.
>
> A: Meaning what?
>
> Q: Not driving the vehicle at all.
>
> A: Excluded driver?
>
> Q: But you weren't going to do that because he does drive the vehicle, right?
>
> A: Yeah.

*Id.*, Ex. C, Evans Recorded Statement 2–5.

Evans verified her recorded statement three years later in her deposition. She also reiterated that she did not want to include her son on her insurance for financial reasons, and that she did not recall telling the insurance agent about her son during the application process:

> Q: Okay. Now, if you did not tell the insurance agent, the person that you talked to when you took the Mendota policy, about Eric [sic], you would have understood that Eri[k] would not be covered under the policy, right?
>
> A: Yes, sir.
>
> . . . .
>
> Q: And so you did not tell the insurance agent, when you took out the application for Mendota, that you had a son, Eri[k], who might be driving the vehicle, did you?
>
> A: I don't recall I did.
>
> . . . .

3

> Q: So whether or not that's your signature, is this the – do these two pages [referring to the application] contain the information that you gave the agent when you applied for the Mendota policy?
>
> A: To the best of my knowledge.
>
> Q: Okay. Including the lack of any mention of your son, Eri[k], who lived at home; is that right?
>
> A: Yes.

*Id.*, Ex. D, Evans Dep. 58:10–15; 58:24–59:3; 60:5–12.

Mendota ultimately denied coverage for Erik's accident after investigating the claim due to Evans's failure to disclose her son on the insurance application as a household resident over age 14. Def.'s Mot. [23] Ex. E, at 3. Having invoked its right to void the policy from its inception date, Mendota sent Evans a premium refund check. *Id.*

Evans filed suit against Mendota in the Circuit Court of Newton County, Mississippi, alleging, among other things, that Mendota breached its contractual obligations, that the insurance agent and Mendota had cancelled Evans's coverage as a result of their own fraud, and that Mendota denied Evans's claim in bad faith.

Mendota removed the action to federal court under 28 U.S.C. § 1441(a), and there is no dispute that diversity jurisdiction exists. Mendota has now moved for summary judgment based upon its right to void Evans's policy because of her material misrepresentations on the insurance application. Def.'s Mot. [23]. Evans, in turn, has filed a Response and Counter-Motion for Summary Judgement [25], primarily arguing that Evans told the insurance agent about her son during the application process.

II.     STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The non-moving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

III.    ANALYSIS

Under Mississippi law, an insurer is permitted to void or rescind a policy that was issued based on an applicant's misrepresentation of material fact in the application.  *Carroll v. Metro. Ins. & Annuity*, 166 F.3d 802, 805 (5th Cir. 1999) (citing *Prudential Ins. Co. v. Russell's Estate*, 274 So. 2d 113, 116 (Miss. 1973); *Coffey v. Standard Life Ins. Co. of the S.*, 120 So. 2d 143, 149 (Miss. 1960); *Wesley v. Union Nat'l Life*, 919 F. Supp. 232, 234 (S.D. Miss. 1995); *Pedersen v.*

5

*Chrysler Life Ins. Co.*, 677 F. Supp. 472, 474 (N.D. Miss. 1988); *Dukes v. S.C. Ins. Co.*, 590 F. Supp. 1166, 1168–69 (S.D. Miss. 1984), *aff'd*, 770 F.2d 545 (5th Cir. 1985)). The insurer pursuing recision must establish both the existence and the materiality of the misrepresentation by clear and convincing evidence. *Id.* (citing *Pedersen*, 677 F. Supp. at 474). Materiality is defined as follows:

> A misrepresentation in an insurance application is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk. Stated differently, a fact is material if it might have led a prudent insurer to decline the risk, accept the risk only for an increased premium, or otherwise refuse to issue to exact policy requested by the applicant.

*Id.* (citing *Mass. Mut. Life Ins. Co. v. Nicholson*, 775 F. Supp. 954, 959 (N.D. Miss. 1991)).

Following these standards, Mendota may void Evans's policy if it can establish by clear and convincing evidence that (1) Evans provided false information on her insurance application, and that (2) Mendota would not have insured Evans had it known of the falsity without increasing the premium or making some other change to Evans's policy. *Id.* Mendota has offered record evidence supporting each prong.

To begin with, there can be no dispute that Evans withheld information. Evans's insurance application contains no mention whatsoever of her son Erik, who was 19 years old and resided with Evans at the time she completed the application. Evans herself testified under oath that Erik was not listed and that she did not recall telling the insurance agent about him. Def.'s Mot. [23], Ex. D, Evans Dep. 58:24–59:3. Evans also testified that to the best of her knowledge, the application accurately reflected the information she provided "including the lack of any mention of [her] son." *Id.* at 60:10–11. Thus, Evans' sworn statements prove the falsity of the information she provided to the agent during the application process.

Materiality is likewise undisputed. The owner of the insurance agency that took the application, Walter Gardner, provided an affidavit that included the following:

> If Ms. Evans had notified the agency that her son lived with her, he would have either been added to the insurance policy and the premium on rates on Ms. Evans's policy would have increased based on the addition of her son as an insured driver, or he would have been listed on the policy as an excluded driver, not covered under the policy.

Def.'s Mot. [23] Ex. A, Gardner Aff. ¶ 6. Evans's testimony confirms the point:

> Q:   [Y]ou knew, that if Eric [sic] were on the policy, it would cost a lot more?
>
> A:   Yes, sir.

*Id.*, Ex. D, Evans Dep. 58:17–19. The materiality of the omission is therefore unrebutted.

Evans attempts to avoid all of this through a number of baldly stated arguments and allegations. Evans's positions, however, are unaccompanied by any supporting evidence. As stated previously, Evans must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075. Factual disputes will exist only when "both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. Plus, Rule 56(e) of the Federal Rules of Civil Procedure now states that if a "party fails to properly support an assertion of fact . . . the court may: . . . (2) consider the fact undisputed for purposes of the motion." Here, although Evans attempts to argue away Mendota's evidence, she failed to submit any evidence of her own.

Turning to the substance of Evans's positions, she first contends that she told the insurance agent about her son when she completed the application. There exists a long "line of cases that removes the right to rescind where an insurance agent 'takes charge of the preparation of the application' and records the information inaccurately." *Nicholson*, 775 F. Supp. at 961 (collecting cases) (citations omitted). "These cases hold that if the agent suggests or advises what is to be answered, the company cannot void the policy because the answers were untrue 'if full disclosures were made by the applicant to him.'" *Id.* (quoting *Miller*, 484 So. 2d at 334). "The application of this doctrine, however, is subject to the necessary qualification that the assured must have acted in good faith, and must have been free of fraudulent concealment or collusion with the agent of the company . . . ." *Fidelity & Cas. Co. of N.Y. v. Cross*, 95 So. 631, 635 (Miss. 1923); *accord Nicholson*, 775 F. Supp. at 961.

Evans cannot avail herself of this legal theory. First, she offers no evidence to support her attorneys' assertion that she disclosed Erik to the agent. Second, Evans's deposition testimony contradicts the argument. According to Evans, she does not recall ever telling the agent about her son. Def.'s Mot. [23], Evans Dep. 58:24–59:3. She likewise testified that to the best of her knowledge, the application accurately reflected what she told the agent, "[i]ncluding the lack of any mention of [her] son." *Id.* at 60:10–11.

Even had Evans provided factual support for her contention that the agent instructed her to omit Erik from the application, her claim still fails for lack of good faith and concealment. *Nicholson*, 775 F. Supp. at 961. Evans intentionally provided a false response on the application because she did not want to pay the extra premiums required to cover Erik. She then sued

Mendota when it understandably refused to cover a claim caused by a driver it had never agreed to insure.  No reasonable juror could find good faith on these facts.

Finally, Evans's other arguments, advanced on the basis of minor discrepancies in the insurance application, were adequately addressed by Mendota's expert with no evidentiary refutation from Evans.  And, at any rate, the arguments fail to create material issues of fact in light of Evans's own admissions.

In short, Evans failed in her duty to direct the Court to record evidence creating a material question of fact that would preclude summary judgment.  The unrebutted record reflects that she failed to disclose an occupant of her home who was over 14 years old and that the omission was material.  There is likewise no evidence in the record that the insurance application contains any material misstatements other than the ones provided by Evans herself.

IV.   CONCLUSION

Based on the foregoing, Mendota's Motion for Summary Judgment [23] is granted, and Evans's Counter-Motion for Summary Judgment [31] is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 25th day of February, 2011.

                                           s/ *Daniel P. Jordan III*
                                           UNITED STATES DISTRICT JUDGE